IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

No. C 12-6466 CW

DEBORAH COONEY,

       Plaintiff,

   v.

THE CALIFORNIA PUBLIC UTILITIES
COMMISSION, et al.,

       Defendants.

ORDER GRANTING
DEFENDANTS'
MOTIONS TO DISMISS
(Docket Nos. 26,
28)

_____/

    Defendants the State of California, the California Public

Utilities Commission (CPUC), CPUC President Michael Peevey and

California Attorney General Kamala Harris (the State Defendants)

and Defendant Itron, Inc. have filed motions to dismiss in this

case.[1]  Plaintiff opposes the motions as to Defendants Peevey,

Harris and Itron.  Acknowledging that her claims against the CPUC

and the State of California are barred by the Eleventh Amendment,

_____

    [1] Plaintiff has not filed a certificate of service,
indicating that she has effectively served Defendant San Diego Gas
and Electric.  Moreover, in Plaintiff's motion for entry of
default as to San Diego Gas and Electric (SDG&E), Plaintiff states
that she did not attempt to serve the complaint until July 19,
2013.  See Docket No. 51.  This action commenced on December 20,
2012, more than 120 days before Plaintiff attempted to serve the
complaint.  Accordingly, the Court orders Plaintiff to show cause
why her claims against SDG&E should not be dismissed for failure
to prosecute.  See Fed. R. Civ. P. 4(m).  If Plaintiff does not
respond to this order to show cause within fourteen days of the
date of this order, her claims will be dismissed.

**United States District Court**
For the Northern District of California

1  Plaintiff has filed a request that the Court dismiss her claims
2  against the CPUC and the State of California without prejudice to
3  refiling in state court.  Having considered the parties' papers,
4  the Court GRANTS Plaintiff's request that the Court dismiss her
5  claims against the CPUC and the State of California (Docket No.
6  36), GRANTS the State Defendants' motion to dismiss (Docket No.
7  26) and GRANTS Itron's motion to dismiss (Docket No. 28).

8                              BACKGROUND

9      This case relates to Plaintiff's claims that she was injured
10 by radio waves released by smart meters installed on her house and
11 in her neighborhood.  Plaintiff alleges that, as a result of these
12 injuries, she has been "forced to take refuge in the National
13 Radio Quiet Zone in Green Bank, WV" where she "sleeps in a cabin
14 without electricity and can tolerate being in electricity for only
15 a few hours a day."  Complaint ¶ 1.  Plaintiff alleges that
16 Defendants violated bans on human experimentation, fraudulently
17 received federal funds, violated federal laws regulating
18 pollutants, caused her personal injury, violated her civil rights,
19 violated her constitutional rights under the First, Fourth, Fifth,
20 Ninth, Tenth and Fourteenth amendments, committed battery and
21 defrauded her.  Plaintiff also alleges a defective product
22 liability claim against Defendant Itron.

23     Plaintiff seeks over $120 million in damages, but states that
24 her damages will be reduced to $20 million if injunctive relief is
25 granted such that she is able to return to live in California.  In
26 addition to monetary damages, Plaintiff seeks declaratory relief
27 and an injunction requiring the replacement of all smart grid
28 technology with the original analog equipment "until such time as

a safe, reliable, and efficacious Smart Grid can be designed, manufactured, procured, properly tested for health and safety, and implemented; or until the people, through a referendum or through their elected representatives, decide to discard, disband, and dismantle the Smart Grid program." Complaint ¶ 125.

## DISCUSSION

I.   State Law Claims and Claims for Damages Against Attorney
     General Harris and CPUC President Peevey

Defendants Harris and Peevey argue that the claims against them are barred on several grounds. First, any claims for damages are barred by the Eleventh Amendment, which bars damages actions against state actors acting in their official capacity. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Flint v. Dennison, 488 F.3d 816, 824-25 (9th Cir. 2007). Moreover, the Eleventh Amendment bars any state law claims asserted against Defendants Harris and Peevey. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 121 (1984). The Court grants State Defendants' motion to dismiss on these grounds and bars any claims against Harris and Peevey for state law claims or for money damages. Because amendment would be futile, dismissal is without leave to amend.

II.  Claims for Injunctive and Declaratory Relief Against
     Defendants Harris and Peevey

          A.   Defendant Harris

State Defendants next argue that the Eleventh Amendment also bars claims for prospective injunctive relief against Defendant Harris. As stated above, the Eleventh Amendment generally bars federal lawsuits against a state. However, Ex parte Young provides an exception for "actions for prospective declaratory or

injunctive relief against state officers in their official
capacities for their alleged violations of federal law."  209 U.S.
123, 155-56 (1908).

State Defendants argue that the Ex parte Young exception to
the Eleventh Amendment does not apply to Defendant Harris because
she has no connection to the implementation of the Smart Grid.  Ex
parte Young requires that the state official sued "must have some
connection with the enforcement of the act."  Id. at 157.  The
California Attorney General has only a general constitutional duty
"to see that the laws of the state are uniformly and adequately
enforced."  Cal. Const. art. V, § 13.

Plaintiff counters that she wrote letters to Defendant
Harris, notifying her of Plaintiff's concerns with the Smart Grid.
Plaintiff asserts, "Since the Plaintiff did send a letter
describing the circumstances to Defendant Harris personally, and
Defendant Harris was and is the chief enforcer of the law in the
State, responsible for ensuring that all State agencies and
employees comply with law, then she had a reasonable duty to
protect the Plaintiff."  Plaintiff's Opposition, Docket No. 33 at
7.  However, Plaintiff provides no authority for this proposition
and the Court is aware of none.

Indeed, the Ninth Circuit has held that the connection "must
be fairly direct; a generalized duty to enforce state law or
general supervisory power over the persons responsible for
enforcing the challenged provision will not subject an official to
suit."  Los Angeles County Bar Ass'n v. March Fong Eu, 979 F.2d
697, 704 (9th Cir. 1992).  Here, Defendant Harris has only a
generalized duty to enforce state law.  She does not have any

United States District Court
For the Northern District of California

4

specific authority over the Smart Grid.  Accordingly, Plaintiff's claims for prospective injunctive and declaratory relief against Defendant Harris are dismissed.  Because amendment would be futile, the dismissal is without leave to amend.

B.   Defendant Peevey

State Defendants argue that Defendant Peevey is entitled to legislative immunity because the CPUC "is not an ordinary administrative agency, but a constitutional body with broad legislative and judicial powers."  Docket No. 34 at 6 (quoting Wise v. Pac. Gas & Elec. Co., 77 Cal App. 4th 287, 300 (1999).  The Supreme Court has held that "state and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities."  Bogan v. Scott-Harris, 523 U.S. 44, 49 (1998).  "Absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'"  Id. at 54 (quoting Tenney v. Brandhove, 341 U.S. 367, 376 (1951)).

Here, Plaintiff is challenging Defendant Peevey's involvement in the implementation of the Smart Grid.  For example, Plaintiff's primary contention is that "Defendants recklessly approved, mandated, facilitated, or allowed the Smart Meter roll out without conducting adequate research as to the health effects of Smart Meter radiation" and that they continue to proceed with the Smart Meter roll out "after being presented with reliable research, scientific and empirical evidence proving the detrimental health effects of Smart Meter and similar radiation on humans."  Complaint ¶¶ 25, 26.  Such decisions are "discretionary, policymaking decision[s]" typically granted legislative immunity.  Bogan, 523 U.S. at 55.  Plaintiff correctly notes that purely

1  ministerial acts are not protected under legislative immunity.

2  Notwithstanding Plaintiff's unsupported contention that "[a]ll of

3  the misconduct described in the Complaint is non-discretionary,

4  administrative, or ministerial in nature," Plaintiff challenges

5  discretionary legislative activity.  Plaintiff's Opposition at 11.

6  Accordingly, the Court finds that Defendant Peevey is entitled to

7  legislative immunity and dismisses Plaintiff's claims against him.

8  Because amendment would be futile, the dismissal is without leave

9  to amend.

10  III. Claims Against Defendant Itron

11      A.   State Law Claims

12      Defendant Itron argues that Plaintiff's action is barred by

13  both state and federal law.  Itron first notes that the California

14  legislature authorized the CPUC to adopt rulemaking related to

15  advanced metering technologies for the Smart Grid.  Cal. Pub.

16  Util. Code §§ 8360, 8362.  Further, the CPUC has authorized the

17  implementation of the Smart Grid and specifically authorized SDG&E

18  to purchase smart meters from Defendant Itron.  Accordingly,

19  Defendant Itron argues that the Court lacks jurisdiction over

20  Plaintiff's case challenging the implementation of the Smart Grid

21  and the installation of Itron smart meters.  Defendant Itron

22  relies on California Public Utilities Code § 1759, which provides,

> No court of this state, except the Supreme Court and
> the court of appeal, to the extent specified in this
> article, shall have jurisdiction to review, reverse,
> correct, or annul any order or decision of the
> commission or to suspend or delay the execution or
> operation thereof, or to enjoin, restrain, or
> interfere with the commission in the performance of
> its official duties, as provided by law and the rules
> of court.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

Cal. Pub. Util. Code § 1759.  However, § 2106 of the California

Public Utility Code provides,

> Any public utility which does, causes to be done, or
> permits any act, matter, or thing prohibited or declared
> unlawful, or which omits to do any act, matter, or thing
> required to be done, either by the Constitution, any law
> of this State, or any order or decision of the
> commission, shall be liable to the persons or
> corporations affected thereby for all loss, damages, or
> injury caused thereby or resulting therefrom. . . .  An
> action to recover such loss, damage, or injury may be
> brought in any court of competent jurisdiction by any
> corporation or person.

Cal. Pub. Util. Code § 2106.

The California Supreme Court has held that § 1759 bars

private actions against utilities where the relief granted would

undermine a regulatory regime established by the CPUC.  San Diego

Gas & Elec. Co. v. Superior Court (Covalt), 13 Cal. 4th 893, 902-

03 (1996).  Moreover, § 2106 is limited to "those situations in

which an award of damages would not hinder or frustrate the

commission's declared supervisory and regulatory policies."

Waters v. Pacific Tel. Co., 12 Cal. 3d 1, 4 (1974).  The

California Supreme Court has applied a three-part test to resolve

any conflict between § 1759 and § 2106.  To determine whether an

action is barred by § 1759, the California courts ask:

"(1) whether the PUC had the authority to adopt a regulatory

policy on the subject matter of the litigation; (2) whether the

PUC had exercised that authority; and (3) whether action in the

case before the court would hinder or interfere with the PUC's

exercise of regulatory authority."  Kairy v. SuperShuttle

International, 660 F.3d 1146, 1150 (9th Cir. 2011) (citing Covalt,

13 Cal. 4th at 923-35).

**United States District Court**
For the Northern District of California

Here, the State Legislature has directed the CPUC to "determine the requirements for a smart grid deployment plan consistent with Section 8360 and federal law" and to implement the smart grid "in a manner that does not compromise customer or worker safety." Cal. Pub. Util. Code §§ 8362, 8363. Based on that authority, the CPUC has, among other things, specifically authorized SDG&E to purchase Defendant Itron's product. Accordingly, a finding that Defendant Itron's products are unsafe under state law would undermine the CPUC's policy decision that installation of Itron's products as part of SDG&E's Smart Grid was consistent with the State Legislature's directive safely to implement the smart grid.

Moreover, California Public Utilities Code § 1702 creates a process by which any person may file a complaint before the CPUC regarding any rule or decision applicable to a public utility. Review of decisions on such complaints rests with the California Supreme Court and the California courts of appeal. Cal. Pub. Util. Code §§ 1703, 1759. Indeed, a group challenged the safety of the Smart Meters installed by Pacific Gas and Electric (PG&E), which was resolved by the CPUC. See CPUC Decision 12-05-007 (May 10, 2012); CPUC Decision 12-06-017 (June 7, 2012); CPUC Decision 10-12-001 (December 12, 2010). Plaintiff has not filed such a complaint.

Defendant Itron argues that § 1759 prohibits Plaintiff's entire action. However, Defendant Itron does not cite any cases in which a court has dismissed federal causes of action based on § 1759, and the Court is aware of none. Cf. Kairy, 660 F.3d at 1148 (addressing "whether a federal district court lacks subject

United States District Court
For the Northern District of California

matter jurisdiction to determine whether passenger stage corporation drivers are employees or independent contractors under California law); Nwabueze v. AT&T Inc., 2011 U.S. Dist. LEXIS 8506, *33 (N.D. Cal.) (addressing contention that the "plaintiffs' state law claims should be dismissed because they are within the exclusive jurisdiction of the [CPUC]"). Accordingly, the Court will dismiss Plaintiff's state law claims against Defendant Itron for lack of subject matter jurisdiction. Because amendment would be futile, the dismissal is without leave to amend.

B.   Federal Claims

Defendant Itron further argues that Plaintiff has failed to state a federal claim. On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911

F.2d 242, 246-47 (9th Cir. 1990).  In determining whether
amendment would be futile, the court examines whether the
complaint could be amended to cure the defect requiring dismissal
"without contradicting any of the allegations of [the] original
complaint."  Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th
Cir. 1990).

Plaintiff alleges two federal claims against Defendant
Itron.[2]  First, she alleges that Defendant Itron has violated
federal prohibitions on human experimentation, citing 45 C.F.R.
part 46 and 42 U.S.C. § 3515b.  Section 3515b provides:

> None of the funds appropriated by this Act or subsequent
> Departments of Labor, Health and Human Services, and
> Education, and Related Agencies Appropriations Acts
> shall be used to pay for any research program or project
> or any program, project, or course which is of an
> experimental nature, or any other activity involving
> human participants, which is determined by the Secretary
> or a court of competent jurisdiction to present a danger
> to the physical, mental, or emotional well-being of a
> participant or subject of such program, project, or
> course, without the written, informed consent of each
> participant or subject, or a participant's parents or
> legal guardian, if such participant or subject is under
> eighteen years of age. The Secretary shall adopt
> appropriate regulations respecting this section.

42 U.S.C. § 3515b.  Title 45 C.F.R. part 46 sets out the
Department of Health and Human Services' rules for the "Protection
of Human Subjects" in research "conducted, supported or otherwise

---

[2] Plaintiff's complaint also alleges that Defendants
fraudulently received federal funds.  However every allegation
related to that claim describes actions by Defendant SDG&E.  The
complaint also alleges various constitutional claims, but
Plaintiff clearly states that those claims "appl[y] specifically
to Defendants State, CPUC, Peevey and Harris."  Complaint ¶ 80.
Accordingly, the Court finds that these claims were not plead
against Defendant Itron.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   subject to regulation by any federal department or agency which

2   takes appropriate administrative action to make the policy

3   applicable to such research."   15 C.F.R. § 46.101.

4       Plaintiff asserts that "Defendants did not properly inform

5   Plaintiff or any other California residents that they would be the

6   subjects of a state-wide grand experiment on the health effects of

7   Smart Meter radiation."   Complaint ¶ 38.   Plaintiff further

8   asserts that "Defendants never followed up or kept records of the

9   health effects that they were supposed to be studying."   Id. at

10  ¶ 40.   However, there are no allegations to support a finding that

11  the smart meter program was an "experiment" or research project

12  regarding the health effects of radiation.   Accordingly, these

13  statutes and regulations are not applicable to Defendants' conduct

14  in this case.   The Court dismisses Plaintiff's human

15  experimentation claim.   Because amendment would be futile, the

16  dismissal is without leave to amend.

17      Plaintiff next alleges that Defendants violated the Hazardous

18  Substances Labeling Act, which prohibits, among other things,

19  "[t]he introduction or delivery for introduction into interstate

20  commerce of any misbranded hazardous substance or banned hazardous

21  substance."   15 U.S.C. § 1263.   Plaintiff bases this claim on her

22  allegation that "radiation from Smart Meter equipment qualifies as

23  a hazardous substance based on its toxicity."   Complaint ¶ 67.

24  However, Defendant Itron has not introduced the radio frequency

25  signals into interstate commerce.   Rather, it creates Smart

26  Meters, which are sold in interstate commerce.   Moreover, the

27  radio frequency signals emitted by Defendant Itron's product are

28  neither a hazardous substance requiring special labeling nor a

United States District Court
For the Northern District of California

1   banned hazardous substance.  Indeed, the Hazardous Substances

2   Labeling Act is concerned with items such as "[c]harcoal

3   briquettes and other forms of charcoal in containers for retail

4   sale and intended for cooking or heating," turpentine, fireworks,

5   and products containing chemicals such as formaldehyde, benzene

6   and methyl alcohol.  16 C.F.R. §§ 1500.12-1500.14.  Accordingly,

7   the Court finds that Plaintiff has failed to state a claim under

8   the Hazardous Substances Labeling Act.  Because amendment would be

9   futile, the dismissal is without leave to amend.

10                              CONCLUSION

11      For the foregoing reasons, the Court GRANTS the State

12  Defendants' motion to dismiss (Docket No. 26) and GRANTS Defendant

13  Itron's motion to dismiss (Docket No. 28).  In addition, the Court

14  GRANTS Plaintiff's request that the Court dismiss her claims

15  against the CPUC and the State of California (Docket No. 36).

16      IT IS SO ORDERED.

17

18  Dated:  7/15/2014

19                              CLAUDIA WILKEN
                                United States District Judge

20

21

22

23

24

25

26

27

28

12